IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CHRISTOPHER ZIELINSKI,                              No. 3:20-cv-00165-HZ

             Plaintiff,                              OPINION & ORDER

      v.

SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 503, a labor organization;
and KATY COBA, in her official capacity as
Director of the Oregon Department of
Administrative Services,

             Defendants.


Rebekah C. Millard
James G. Abernathy
Freedom Foundation
P.O. Box 552
Olympia, WA 98507

      Attorneys for Plaintiff

Scott A. Kronland
Eileen B. Goldsmith
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108

James S. Coon
Thomas, Coon, Newton & Frost
820 SW Second Ave., Suite 200
Portland, OR 97204

      Attorneys for Defendant SEIU 503

Ellen F. Rosenblum
Sadie Forzley
Carla A. Scott
Oregon Department of justice
100 SW Market Street
Portland, OR 97201

      Attorneys for Defendant Katy Coba


HERNÁNDEZ, District Judge:

      Plaintiff Christopher Zielinski brings this action against Defendants Service Employees International Union Local 503 ("SEIU 503") and Katy Coba, in her official capacity as Director of the Oregon Department of Administrative Services. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging Defendants violated his rights under the First and Fourteenth Amendments, as well as a claim of common law fraud against SEIU 503. Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants Defendants' Motions to Dismiss [16, 20].

## BACKGROUND

      Plaintiff is an employee of the Oregon Health Authority. Compl. ¶ 8, ECF 1. He is in a collective bargaining unit represented by Defendant SEIU 503. *Id.* The Oregon Department of Administrative Services ("DAS") pays Plaintiff's wages. *Id.* Defendant Katy Coba is the

Director of Oregon DAS (hereinafter the "State"). *Id.* at ¶ 10. Plaintiff has consistently refused to become a member of SEIU 503 because he did not want to be bound by the terms and conditions of membership. *Id.* at ¶¶ 11-12. Despite never electing to join the union, SEIU 503 treated Plaintiff as a member and directed the State to deduct union dues from his paycheck since he started working at his current position in 2009. *Id.* at ¶¶ 1, 12. "SEIU 503 has sole control over union membership information, and the [State] depends entirely on representations made by SEIU 503 with regard to union membership and dues authorization." *Id.* at ¶ 20.

In September 2019, Plaintiff asked how he could leave the union while speaking with a representative of SEIU 503. *Id.* at ¶ 13. The representative told Plaintiff that he could send an "opt-out letter, but that he would be required to continue to pay dues until July of 2020 because of a membership agreement he signed in September of 2017." *Id.* In response to Plaintiff's request for documentation of him joining the union, SEIU 503 sent Plaintiff copies of union membership cards that he purportedly filled out and signed in 2013 and 2017. *Id.* at ¶¶ 15-17. Plaintiff alleges that the signatures on the membership cards were "forged," and he has never "given any form of affirmative consent to pay dues." *Id.* at ¶¶ 17-19. After Plaintiff insisted that he never signed the agreements, SEIU 503 instructed the State to terminate his dues deductions effective December 2019. Johnson Decl. ¶ 9, ECF 17. No union dues have been deducted from his pay since then. *Id.*

Plaintiff alleges two causes of action under 42 U.S.C. § 1983 and one cause of action for common law fraud. In Count I, Plaintiff alleges Defendants violated his First Amendment rights by deducting dues from his pay "without his knowing, voluntary and intelligent consent." Compl. ¶ 25. He claims the dues deduction system violated his rights not to associate with SEIU 503 or to support the union's petitioning and speech. *Id.* at ¶ 26. In Count II, Plaintiff alleges

Defendants violated his First Amendment rights and Fourteenth Amendment due process rights by deducting union dues without "adequate procedural due process safeguards." *Id.* ¶ 33. He alleges the State "failed to implement any process for verification or confirmation of union membership" provided to it by SEIU 503, and "SEIU 503 failed to adequately train, vet, monitor, or otherwise instruct union personnel in such a manner as to avoid violating First Amendment rights[.]" *Id.* at ¶ 34. In Count III, Plaintiff alleges SEIU 503 committed fraud by unlawfully obtaining money from him based on "a false and material misrepresentation of fact" to the State: namely, that Plaintiff elected to be a member of the union. *Id.* at ¶¶ 38-40.

Plaintiff seeks prospective and retrospective relief, including declarations that Defendants violated his First Amendment rights; a permanent injunction prohibiting Defendants from "maintaining and enforcing any of the policies, provisions, or actions declared unconstitutional or illegal including the deduction of union dues or fees from Plaintiff's wages without his consent"; compensatory, nominal, and punitive damages against SEIU 503 only; and attorneys' fees and costs. *Id.* at ¶¶ A-G.

## STANDARDS

## I.      Rule 12(b)(1) – Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A party may challenge a court's subject matter jurisdiction under Rule 12(b)(1). A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979–80 (9th Cir. 2007) (court treats motion attacking substance of complaint's jurisdictional allegations as a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can

attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (internal quotation omitted). Additionally, a court may consider evidence outside the pleadings to resolve factual disputes. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also Dreier*, 106 F.3d at 847 (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court). Mootness is a question of subject matter jurisdiction properly raised under Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

## II.    Rule 12(b)(6) – Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id*. (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

SEIU 503 contends Plaintiff's constitutional claims must be dismissed because "a private party's illegal conduct, which takes place without the knowledge of state officials, is not 'state action,' and state action is necessary for a § 1983 claim." SEIU 503's Mot. Dismiss 2, ECF 16. SEIU 503 further contends that Plaintiff's request for prospective relief "does not present a live case or controversy because Plaintiff's union dues deductions were terminated in December 2019[.]" *Id.* SEIU 503 argues the Court should decline to exercise supplemental jurisdiction over the state law fraud claim. *Id.* at 3. The State joins in SEIU 503's motion and additionally argues Plaintiff's § 1983 claims are moot. State's Mot. Dismiss 2, ECF 20.

## I.     Failure to State a Claim

To state a claim under 42 U.S.C. § 1983, Plaintiff must show that SEIU 503 deprived him of a right secured by the Constitution and acted "under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (citation omitted). Plaintiff argues SEIU 503 is a state actor because the union uses state authority to direct the State's deduction of money from public employees' wages. Plaintiff's argument is foreclosed by the Ninth Circuit's recent decision in *Belgau v. Inslee*, No. 19-35137, 2020 WL 5541390 (9th Cir. Sept. 16, 2020).

In *Belgau*, the plaintiffs were public-sector employees who signed union membership agreements authorizing Washington State to deduct dues from their wages and pay them to the Washington Federation of State Employees, AFSCME Council 28 ("WFSE"). *Belgau*, 2020 WL 5541390, at *2. After the Supreme Court held in *Janus v. Am. Fed'n of State, Cty., & Mun.*

*Employees, Council 31*, 138 S. Ct. 2448 (2018), that compelling nonmembers to subsidize union speech is offensive to the First Amendment, the plaintiffs notified WFSE that they no longer wanted to be union members or pay dues. *Id.* at *3. WFSE terminated the plaintiffs' union memberships but continued to deduct union dues from their pay until an irrevocable one-year term expired. *Id.* The plaintiffs brought a putative class action against Washington Governor Jay Inslee, several state agency directors, and WFSE, alleging that the dues deductions violated their First Amendment rights and unjustly enriched WFSE. *Id.* The plaintiffs sought injunctive relief against Washington for the continued deduction of union dues and compensatory and other relief against WFSE. *Id.*

The Ninth Circuit held the plaintiffs' § 1983 claims against the union failed for lack of state action. *Id.* at *3-6. The court set out a two-part analysis to determine whether WFSE's conduct was fairly attributable to the state, asking: (1) "whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) "whether the party charged with the deprivation could be described in all fairness as a state actor." *Id.* at *4 (citation and internal quotation marks omitted).

In addressing the first prong of the state action test in *Belgau*, the Ninth Circuit explained:

> It is important to unpack the essence of Employees' constitutional challenge: they do not generally contest the state's authority to deduct dues according to a private agreement. Rather, the claimed constitutional harm is that the agreements were signed without a constitutional waiver of rights. Thus, the "source of the alleged constitutional harm" is not a state statute or policy but the particular private agreement between the union and Employees.

*Id.* (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013)); *see also Schiewe v. Serv. Employees Int'l Union Local 503*, No. 3:20-CV-00519-JR, 2020 WL 5790389, at *2 (D.

Or. Sept. 28, 2020) (holding *Belgau*'s "reasoning applies with equal force to" virtually identical § 1983 claims and dismissing claims against SEIU 503 for lack of state action).

Plaintiff does not contest the State's authority to deduct union dues pursuant to a membership agreement. Instead, the claimed constitutional harm stems from SEIU 503 forging Plaintiff's signature on the agreements and authorizing dues deductions without his consent. Compl. ¶¶ 1-2, 15, 18-19, 23, 25, 35, 43-45. Thus, as in *Belgau*, the source of the alleged constitutional harm is not a State statute or policy but the particular private agreement between the union and Plaintiff. SEIU 503's "private misuse of a state statute does not describe conduct that can be attributed to the State[.]" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *see also* O.R.S. § 292.055 (repealed Jan. 1, 2020) (permitting union dues deductions only when authorized by the state employee). "Where, as here, the dispute surrounds whether the agreement the plaintiff signed is valid, the allegedly wrongful conduct stems from the union's authorization of dues, an exclusively private act." *See Schiewe v. Serv. Employees Int'l Union Local 503*, No. 3:20-CV-00519-JR, 2020 WL 4251801, at *5 (D. Or. July 23, 2020), *report and recommendation adopted*, 2020 WL 5790389 (D. Or. Sept. 28, 2020). Plaintiff's § 1983 claims therefore fail the first prong of the state action test. Accordingly, the Court dismisses with prejudice the constitutional claims against SEIU 503 because Plaintiff's allegations fail to state a claim upon which relief can be granted.[1]

///

///

---

[1] Because Plaintiff has not satisfied the first prong of the state action test, the Court need not reach the second prong. *Lugar*, 457 U.S. at 941 (noting a plaintiff must satisfy both prongs of the state action test to maintain a claim); *see also Schiewe*, 2020 WL 5790389, at *3-4 (finding, in light of *Belgau*, virtually identical claims failed the second prong of the state action test).

## II.    Subject Matter Jurisdiction

The State moves to dismiss Plaintiff's claims for declaratory and injunctive relief as moot. Federal courts are courts of limited jurisdiction, such that, to proceed in this forum, Plaintiff's claim must present a live "case" or "controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). A federal court must decide mootness before it can assume jurisdiction. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). "The starting point for analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *Rice*, 404 U.S. at 246). "[A] suit becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

In particular, claims for equitable relief become moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citation and internal quotations omitted). Where, as here, a defendant voluntarily ceases the challenged conduct, a plaintiff must show "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854-55 (noting "capable of repetition but evades review" exception applies only if "there is a reasonable expectation that the plaintiffs will be subjected to [the offensive conduct] again").

Here, Plaintiff's claims for equitable relief do not present a live case or controversy. As of December 2019, the State is no longer deducting union dues from Plaintiff's wages. Pl.'s Resp. 29, ECF 23; Johnson Decl. ¶ 9; Barrett Decl. ¶ 5, ECF 21. Because Defendants have

voluntarily ceased the challenged activity, Plaintiff's claims are not moot if there is "a

'reasonable expectation' or a 'demonstrated probability' that the *same* controversy will recur

involving the *same* complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (emphasis

added). Plaintiff cannot make this showing.

Plaintiff argues that he "remains at risk of another membership card being forged and

dues once again being taken out of his paychecks." Pl.'s Resp. 25. Plaintiff's expectation of

repeated unlawful dues deductions is neither reasonable nor probable given Defendants'

representations. The State asserts that no future union dues will be deducted from Plaintiff's pay

unless he joins SEIU 503, and SEIU 503 notifies the State that authorization exists. Barret Decl.

¶ 5. Additionally, to ensure any future dues deductions will not occur absent Plaintiff's consent,

SEIU 503's "membership department has been instructed to flag [Plaintiff]'s name in its

databases so that, if any membership application is received under his name in the future, it will

be brought to the attention of the [SEIU 503]'s legal department for review before any action is

taken to process the application." Johnson Decl. ¶ 10. Therefore, "no union dues could be

deducted from [Plaintiff]'s pay in the future unless he voluntarily authorizes the deductions." *Id.*

at ¶ 9.

Plaintiff does not dispute this evidence, nor does he argue that union dues will be

deducted in contravention of state law absent further fraud. *See Leite v. Crane Co.*, 749 F.3d

1117, 1121 (9th Cir. 2014) ("When the defendant raises a factual attack, the plaintiff must

support her jurisdictional allegations with 'competent proof[.]'") (citation omitted); *see also*

*Ochoa v. Serv. Employees Int'l Union Local 775*, No. 2:18-CV-0297-TOR, 2019 WL 4918748,

at *4 (E.D. Wash. Oct. 4, 2019) (finding the plaintiff failed to demonstrate a substantial

likelihood of a similar deprivation where there was "no evidence that a forged authorization will

occur again"); *Yates v. Washington Fed'n of State Employees*, No. 3:20-CV-05082-RBL, 2020

WL 3118496, at *5 (W.D. Wash. June 12, 2020) (finding the plaintiff's argument of future,

similar deprivation unavailing where the plaintiff presented "no evidence to contradict WFSE's

showing that its procedures make unauthorized withdrawals very unlikely," and further noting

"[t]he fact that [the plaintiff] encountered an isolated instance of misconduct or error in the past

does not mean she is at heightened risk of another similar experience"); *Stroeder v. Serv.*

*Employees Int'l Union*, No. 3:19-CV-01181-HZ, 2019 WL 6719481, at *3 (D. Or. Dec. 6, 2019)

(explaining there was no reasonable expectation that the plaintiff would be subjected to the

challenged action again in analogous circumstances). And although "[i]t is true that Plaintiff is

not completely immunized from bad actors" by the policies and procedures put into place by

Defendants, "the constitution does not assure such." *Ochoa*, 2019 WL 4918748, at *4.

Accordingly, Plaintiff's request for equitable relief against the State is dismissed with prejudice

for lack of subject matter jurisdiction.

## III.    Supplemental Jurisdiction

Because Plaintiff's federal claims have been dismissed, the Court must determine

whether it should exercise supplemental jurisdiction over the common law fraud claim against

SEIU 503 despite the lack of diversity between the parties. A district court may decline to

exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over

which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). When a court dismisses all federal

law claims before trial, "the balance of the factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to

exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n. 7 (1988); *accord Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.

1997) (en banc); *see also Crane v. Allen*, No. 3:09-cv-1303-HZ, 2012 WL 602432, at *10 (D. Or. Feb. 22, 2012) ("Having resolved all claims over which it had original jurisdiction, this court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.").

The Court finds that the factors of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction. Neither the Court nor the parties have invested significant time and resources sufficient to justify retaining jurisdiction. State court is a convenient forum for the parties and declining to exercise supplemental jurisdiction respects the values of federalism and comity. For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. Accordingly, Plaintiff's common law fraud claim is dismissed without prejudice.

## IV.    Leave to Amend

Rule 15(a) states that the court should "freely give leave " to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a). Whether to grant or deny leave to amend is within the Court's discretion. *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). That discretion is guided, however, by the "underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (citation omitted). Accordingly, the policy favoring amendment should be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).

Five factors weigh on the propriety of a motion for leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously amended its complaint. *Nunes*, 375 F.3d at 808 (citation omitted). Prejudice to the opposing party is the "touchstone" of the Rule 15(a) inquiry and carries the

greatest weight. *Eminence Capital, LLC*, 316 F.3d at 1052 (citation omitted). Absent prejudice or a strong showing on any of the other factors, there is a presumption under Rule 15(a) in favor of granting leave to amend. *Id.*

The sole basis provided by Plaintiff for why the Court should grant him leave to amend his Complaint is so that he can "plead additional facts and claims for deprivation [of] Federal law and supplemental claims for violation of State law." Pl.'s Resp. 31. However, Plaintiff does not provide any detail of what "additional facts and claims" he intends to raise; nor does he address the leave-to-amend factors discussed above. Moreover, given the limited nature of Plaintiff's allegations, the Court does not see how amendment can cure the deficiencies in his legal theories. Therefore, Plaintiff's request for leave to amend is denied. Plaintiff may, however, renew his request by filing a motion for leave to amend under Rule 15(a) along with the proposed amended complaint. A renewed motion for leave to amend, if any, is due within 30 days of this Opinion & Order.

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

For the reasons discussed, Defendants' Motions to Dismiss [16, 20] are GRANTED. The First and Fourteenth Amendment claims brought under 42 U.S.C. § 1983 are dismissed with prejudice for failure to state a claim as to SEIU 503 and for lack of subject matter jurisdiction as to the State. The common law fraud claim against SEIU 503 is dismissed without prejudice so that Plaintiff may, if he chooses, bring that claim in state court. Plaintiff's request for leave to amend the Complaint is denied, but with leave to renew within 30 days of this Opinion & Order. If Plaintiff does not timely renew his request for leave to amend, the Court will enter judgment in favor of Defendants.

IT IS SO ORDERED.


DATED:___November 2, 2020_____.




MARCO A. HERNÁNDEZ
United States District Judge